F. E. Nugent Funeral Home, Inc., Appellant, *v.* Beamish, Secretary of Commonwealth et al.

Argued April 9, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Samuel Lippincott Borton,* for appellant.—The act of June 10, 1931, P. L. 485, is not in any proper sense an exercise of the police power.

The general welfare of the public is already provided for.

Laws of health and sanitation, or the general public welfare, are in no way jeopardized if all the officers of a corporation are not undertakers.

Section 13 of the Act of June 10, 1931, P. L. 485, is in contravention of the equal protection clause of the Fourteenth Amendment of the United States Constitution: Liggett Co. v. Baldrige, 278 U. S. 105.

*A. L. Edwards,* Deputy Attorney General, with him *Wm. A. Schnader,* Attorney General, for appellees.—Appellant's remedy, if any, is by mandamus: Williamsport v. Gas Co., 232 Pa. 232; Johnson v. State Board, 46 Pa. Superior Ct. 279.

An injunction will not lie to restrain criminal prosecution to enforce a penal act on the sole ground that the act is unconstitutional: Phila. Co. v. Stimson, 223 U. S. 605; Long v. Metzger, 301 Pa. 449.

Section 13 of the Undertakers Act is not unconstitutional.

The purpose of the legislature was to make certain that a duly licensed undertaker would be in charge of the business of the corporation at all times.

Liggett Co. v. Baldrige, 278 U. S. 105, is not analogous. In the Liggett Case the act of assembly forbade the operation of a drug store by a corporation unless all stock-

holders were licensed pharmacists. In the present case the only requirement of the act is that in order to secure a corporation license to practice undertaking there must be at least two licensed undertakers who must be officers of the corporation.

OPINION BY MR. JUSTICE KEPHART, May 21, 1934:

Appellant, a Delaware corporation, applied to the state department for a certificate of authority to conduct an undertaking business in Pennsylvania. The secretary of the Commonwealth refused to grant the permission because appellant had not conformed to the conditions necessary to secure such right. The court below dismissed the proceeding against the attorney general, the secretary of the Commonwealth, the state board of undertakers, and the district attorney of Philadelphia. The issue before us is the validity of the Act of June 10, 1931, P. L. 485 (known as the Undertakers' Act), under the federal Constitution.

Section 13, complained of, requires the officers of a corporation organized to carry on the business of undertaking to be licensed undertakers.* While appellant contends that this requirement is an invalid exercise of the police power, we will consider the primary question involved, the power of a state to condition the entry of foreign corporations to do business within its borders. Appellant is a foreign corporation which has never done business in this Commonwealth and seeks to enter to conduct that business.

---

* "The provisions of this act shall not be construed as preventing the conducting of the business or profession of undertaking by a corporation heretofore licensed; or by a corporation, all the officers of which are duly licensed undertakers actively engaged in the conduct of the business of said corporation if such corporation is registered by and conforms with such rules and regulations as the board may prescribe with relation thereto; and no branch licenses shall hereafter be granted any corporation."

Corporations organized under a state's laws, essentially creatures of that state, depending on it alone for power and authority, cannot by that state be invested with the right to do business in another state which must be recognized by such other state. A state may wholly exclude a foreign corporation from doing business therein, unless it is engaged in interstate or foreign commerce or is an instrumentality of the central government. Before a corporation of one state may do business in another, it must, if that state so demands, secure its permission to enter: Crescent Oil Co. v. Mississippi, 257 U. S. 129, 137; Horn Silver Mining Co. v. New York, 143 U. S. 305; Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 83; Munday v. Wisconsin Trust Co., 252 U. S. 499. A state may impose any conditions it sees fit on the privilege of a foreign corporation to do business, provided the conditions do not invade rights created or guaranteed by the federal Constitution: Sioux Remedy Co. v. Cope, 235 U. S. 197, 203; Interstate Amusement Co. v. Albert, 239 U. S. 560; Munday v. Wisconsin Trust Co., supra; Frost Trucking Co. v. R. R. Com., 271 U. S. 591, 594. Justice FIELD, in Horn Silver Mining Co. v. New York, supra, at page 314, said: "......a foreign corporation......can claim a right to do business in another state, to any extent, only subject to the conditions imposed by its laws," and quoted with approval from Paul v. Virginia, 8 Wall. 168, 181, in part as follows: "Having no absolute right of recognition in other states, but depending for such recognition......upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to. particular localities, or they may exact such security for the performance of its contracts......as in their judgment will best promote the public interest. The whole matter rests in their discretion. The right granted by the parent state, of a corporation to do busi-

ness anywhere, is not a property right which will be protected by the Constitution of the United States.

But where a foreign corporation, by compliance with a state's conditions, obtains a right to do business in that state, and does business therein, it has what in many particulars is akin to a domestic corporation's federal rights as to subsequent or future regulation. This is true notwithstanding the right reserved in our Constitution to alter, amend or revoke the charters of domestic corporations. Neither domestic nor foreign corporations may be destroyed through unconstitutional acts. Thus a foreign corporation cannot be compelled to remove from the state because of a failure to comply with an unreasonable regulation imposed subsequently to its entry in violation of the Fourteenth Amendment. Having acquired a right to do business, and doing it, it cannot be limited in such right by regulations which will effect a deprivation of property (Liggett Co. v. Baldrige, 278 U. S. 105), or a denial of equal protection of the laws; nor can such regulations be imposed on a domestic corporation under the Fourteenth Amendment: Frost Trucking Co. v. R. R. Com., supra. Where such authority is invoked under the police power by a state, it is then that the reasonableness of regulations become pertinent. In each of the foregoing cases the corporation affected had a business physically located within the state, that is, it had a property right which was infringed by what the United States Supreme Court termed an unreasonable regulation.

In the cases where the Federal Supreme Court has stricken down provisions of state statutes because they violated the federal Constitution, the foreign corporations were within the state doing business. In some the provisions offended the Fourteenth Amendment: Power Co. v. Saunders, 274 U. S. 490; Liggett Co. v. Baldrige, supra, at page 111; Liggett Co. v. Lee, 288 U. S. 517. In others they were direct attacks on federal power by means of conditions imposed, which might have been

considered precedent to entry and under which the corporation entered. Instances of these are the attempts by states to prevent the removal of causes to the federal courts (Southern Pacific Co. v. Denton, 146 U. S. 202; Southern Ry. Co. v. Allison, 190 U. S. 326; Herndon v. C., R. I. & P., 218 U. S. 135; Harrison v. St. L. & San Francisco R. R., 232 U. S. 318), to burden interstate commerce (Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1; Norfolk & Western Ry. v. Penna., 136 U. S., 114; Crutcher v. Kentucky, 141 U. S. 47; Western Union Tel. Co. v. Kansas, 216 U. S. 1), to regulate agencies of government: Pembina Mining Co. v. Penna., 125 U. S. 181, 186; Horn Silver Mining Co. v. New York, supra. Such conditions are invalid since no state may enact a law which nullifies a power of the federal government. If such legislation were tolerated, a state could denude the federal Constitution of its force. The interstate commerce provision could be rendered nugatory by state enactments conditioning the entry of interstate carriers; aside from the fact that power is, by the United States Constitution, expressly lodged in the federal government to determine in its own courts controversies coming within its confines, it is readily seen that all constitutional provisions might be made impotent if the states, through their legislatures and courts, were permitted to determine the venue of litigation arising thereunder. Care should be taken to distinguish between cases where a corporation comes into a state casually to enforce some specific right (Kentucky Co. v. Paramount Exch., 262 U. S. 544), and where a corporation is doing business, or seeks to enter to do business within the state, the last being the question we now have before us.

In this case the corporation is attempting to enter the state. This Commonwealth could wholly exclude it even though our citizens might be inconvenienced or suffer, or, by so doing, it manifests a spirit of unfriendliness towards sister states; it may prohibit, but such prohibi-

tion cannot carry with it a purpose hostile to the jurisdiction and sovereignty of the United States.

As stated above, there is no federal right invaded by withholding consent to do business unless the conditions imposed violate a federal right. There is no federal right in a corporation created in one state to do business in another into which it wishes to extend its activities. This corporation in its undertaking business is not engaged in interstate commerce, and the conditions imposed do not affect any of the powers of the federal government. The question is not whether the conditions imposed on a foreign corporation entering are reasonable, which, in this case, we unhesitatingly hold they are, but whether these conditions invade a federal right. If a state may admit foreign corporations to do business subject to certain conditions, to hold that any condition imposed must come under the scrutiny of the Fourteenth Amendment on a theory of some right grounded in the parent state, would deny to a state the power to regulate the entry of foreign corporations. We again emphasize that we are not dealing with a corporation already in the state, but one seeking admission. As to such a corporation, regulations may be imposed that do not appertain to domestic corporations.

What federal right in this corporation, chartered in Delaware, is invaded by the State of Pennsylvania when it requires all officers of the corporation to be licensed undertakers before it will be permitted to enter and do business? It must be remembered that this condition of entry is not imposed under the police power, but is a regulation judged by the principles of comity. A foreign corporation seeking to do business in a state is not denied equal protection of the law under the Fourteenth Amendment by any state statute since it is not within the jurisdiction of the state. This is so, however unjust a regulation may be deemed: Blake v. McClung, 172 U. S. 239. Appellant places great stress on Liggett Co. v. Baldrige, supra, but the answer, as adverted to, lies in

the fact the Liggett Company was doing business in the state prior to the imposition of the condition in question, and the act forbade the exercise of a property right in contravention of its constitutional guarantees. A state cannot, "under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them": Burns Baking Co. v. Bryan, 264 U. S. 504, 513. See also Meyer v. Nebraska, 262 U. S. 390, 399-400; Norfolk Ry. v. Pub. Ser. Com., 265 U. S. 70, 74; Pierce v. Society of Sisters, 268 U. S. 510, 534-5; Weaver v. Palmer Bros. Co., 270 U. S. 402, 412-15; Fairmont Co. v. Minnesota, 274 U. S. 1, 9-11. Appellant was never within this State to acquire or become possessed of any rights. Until it does so acquire rights, the reasonableness of a condition is immaterial.

Appellant's position would be no better off were we to declare the act unconstitutional. The intent and purpose of the Undertakers' Act, the Act of June 10, 1931, P. L. 485, was to license individuals, not corporations, as undertakers. It permitted corporations that had been and were doing an undertaking business at the time the act was passed, to continue to do business. It also permitted corporations afterwards organized, either domestic or foreign, to secure a permit to do business if all the officers were licensed undertakers and personally performed the acts of undertaking. If this latter provision is stricken down, then, as we view the Undertakers' Act, corporations, either domestic or foreign, cannot transact an undertaking business in this State, after its passage, unless they were engaged therein prior to its enactment.

Decree affirmed, at appellant's cost.